UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONTINENTAL CASUALTY COMPANY,

        Plaintiff,

v.                                                                        Case No. 15-11943

                                                     HON. TERRENCE G. BERG
WILLIAM C. HARSHA, et al.                        HON. DAVID R. GRAND

        Defendants.
_____/

**ORDER DENYING DEFENDANT ANGELA THOMPSON'S
MOTION TO SET ASIDE A CLERK'S ENTRY OF DEFAULT (DKT. 60)**

      This is a declaratory judgment action. On May 29, 2015, Plaintiff Continental Casualty Company filed suit against members of a law firm and others, some 14 Defendants in all, seeking a determination that it is not liable to pay claims under a professional liability insurance policy. (*See* dkt. 1.) On July 23, 2015, Plaintiff filed its First Amended Complaint. (Dkt. 18.) The First Amended Complaint omitted Defendant Angela Thompson, who had been named in the original complaint, because Defendant Thompson had voluntarily filed for bankruptcy. (*Id.* at ¶ 20.) Plaintiff explained in its motion that it intended to file "a motion with the Bankruptcy Court seeking leave to further amend its complaint in this action to rename Thompson as a defendant." (*Id.*) As a result of the bankruptcy filing, the Court entered a notice on July 28, 2015 staying all proceedings in this case against Defendant Thompson in accordance with 11 U.S.C. § 362(a). (Dkt. 23.)

On August 3, 2015, Plaintiff was granted relief from the automatic stay in Defendant Thompson's bankruptcy case. (Dkt. 62-7.) In the bankruptcy court order, the stay was lifted "for the limited purpose of allowing Continental to continue to prosecute the declaratory judgment action styled *Continental Casualty Co. v. William C. Harsha, et al.*, Case No. 15-cv-11943 (E.D. Mich.) against debtor Angela Thompson". (*Id.* at ¶ 2.) The stay was also lifted to allow "Continental to pay 'claim expenses,' as defined by the Policy, incurred by Thompson in connection with certain third-party liability claims asserted by former clients" of the law firm. (*Id.* at ¶ 3.)

On August 13, 2015, Plaintiff requested leave to file its Second Amended Complaint "for the sole purpose of renaming Angela Thompson" as a Defendant in this case. (Dkt. 26, p. 1.) Plaintiff also requested that all defendants be ordered to respond to the Second Amended Complaint within 14 days of its filing. (*Id.* at 16.) No defendant challenged the motion, and Plaintiff's Second Amended Complaint was accepted for filing on September 3, 2015. (Dkt. 28.) Defendants were also ordered to respond within 14 days of the date of the Order. (*Id.* at 3.) In its order granting Plaintiff leave to file its Second Amended Complaint, this Court explicitly stated that "[o]n August 3, 2015, Plaintiff was granted relief from the automatic stay in Defendant Thompson's bankruptcy case." (*Id.* at 1.)

The Second Amended Complaint renames Angela Thompson and asserts that the bankruptcy stay imposed in her bankruptcy proceeding has been lifted "for the limited purpose of allowing Continental to continue to prosecute this action against

2

Thompson" and for Plaintiff to pay certain "claim expenses" incurred by Thompson. (Dkt. 26-3, ¶ 107.) Defendant Thompson did not respond to the Second Amended Complaint or otherwise appear in this action. On November 4, 2015, Plaintiff requested a clerk's entry of default against Defendant Thompson and two other defendants. (Dkts. 44-46.) The defaults were entered on November 5, 2015. (Dkts. 47-49.)

For approximately six months afterward, Defendant Thompson continued to ignore this case. During that time, those parties that did participate engaged in complex settlement negotiations before United States Bankruptcy Court Judge Mark Randon. (*See* dkt. 56.) As part of this Court's facilitation order, a stay was imposed in this matter prohibiting "discovery, responses to discovery, or disclosures" and "motions, responses to motions already filed, or responsive pleadings". (*Id.* at ¶ 8.) On May 23, 2016, the parties filed a status report with the undersigned notifying the Court that a settlement was reached in principle on March 11, 2016 and that term sheets had been signed on May 12, 2016. (Dkt. 59, p. 1.) Accordingly, the parties requested a 45-day continuance of the stay to allow the settlement to be finalized. (*Id.* at 2.) That continuance expired on July 7, 2016.

On May 31, 2016, Defendant Thompson filed a motion to set aside the clerk's entry of default judgment that was filed on against November 5, 2015. (Dkt. 60.) In her motion, Defendant Thompson argues that, as a lay person, she did not "understand or appreciate" that she was required to take any action in this case and asserts that she has a meritorious defense. (*Id.* at 11-12.) Although she admits to

3

receiving Plaintiff's Second Amended Complaint renaming her as a Defendant and alleging that the bankruptcy stay had been lifted for the explicit purpose of pursuing this action against her, as well as this Court's September 3, 2015 Order stating the same, Defendant Thompson maintains that she believed these proceedings remained stayed. (*Id.* at 12.) Defendant Thompson's motion is notably silent on the question as to whether she or her bankruptcy attorney received the August 3, 2015 order lifting the bankruptcy stay and ordering Plaintiff to pay certain expenses on behalf of Defendant Thompson.[1] (*See id.*)

On June 14, 2016, Plaintiff filed a response to Defendant Thompson's motion, arguing that it would be significantly prejudiced if Defendant Thompson were permitted to litigate this matter now, on the eve of settlement. (Dkt. 62, p. 14.) Plaintiff also asserts that Defendant Thompson's conduct is sufficiently culpable to merit denying her motion and that she has not asserted a meritorious defense to Plaintiff's claims. (*Id.* at 9, 12.)

Plaintiff's motion is joined by Defendants Edward Szachta and Mary Van Hevele, who did defend themselves in this matter and who urge the Court to deny Defendant Thompson's motion to set aside the Clerk's entry of default in part because significant prejudice will result to everyone involved in the settlement. (Dkt. 63.) Defendants Szachta and Van Hevele assert that Defendant Thompson should not be considered a "lay person" because she "was a legal assistant or legal

---

[1] At a status conference held in this matter on June 24, 2016, Defendant Thompson's counsel, who is not the attorney representing her in her bankruptcy proceeding, admitted that he did not know whether she had received the order lifting the bankruptcy stay. Defendant Thompson did not file a reply brief addressing this question.

4

secretary for 38 years" and "the office manager at the firm" from 1999 to 2014 and thus "very familiar with legal pleadings and papers, including summonses, complaints, and defaults, and the consequences of a default". (*Id.* at 2.) Defendant Thompson did not file a reply brief and, pursuant to Local Rule 7.1, the time to do so has passed; she therefore leaves these assertions unchallenged.

Defendant Thompson's motion fails to show good cause to set aside the default and therefore it will be **DENIED**.[2] The decision whether to set aside an entry of default is discretionary. *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 193 (6th Cir.1986). A district court may set aside an entry of default "[f]or good cause shown." Fed. R. Civ. P. 55(c). In ruling upon a motion seeking to set aside a clerk's entry of default, the court must weigh whether: 1) the other parties will be prejudiced; 2) the defaulted defendant has articulated a meritorious defense or claim; and 3) the defaulted defendant's culpable conduct led to the default. *Berthelsen v. Kane*, 907 F.2d 617, 620 (6th Cir. 1990). The Court undertakes this balancing test in light of this circuit's "somewhat more lenient standard" with respect to "Rule 55(c) motions where there has only been an entry of default, than to Rule 60(b) motions where judgment has been entered." *Shepard Claims Serv.*, 796 F.2d at 193.

---

[2] The Court acknowledges that Defendant Thompson's motion is inappropriate in light of the discovery and motion practice stay imposed on January 26, 2016 and extended through July 7, 2016. (*See* dkts. 28, 56.) Rather than strike the motion, the Court will address its merits given that Plaintiff and two Defendants have responded, and given the potential impact of this motion on the settlement negotiations in this matter.

### 1. The Other Parties will be Significantly Prejudiced

The other parties will be significantly prejudiced if Defendant Thompson is permitted to set aside the clerk's entry of default. A plaintiff must point to something more than mere delay in order to establish prejudice. *Thompson v. Am. Home Assurance Co.,* 95 F.3d 429, 433 (6th Cir.1996). Rather, "the delay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *Id.* at 433–34.

As a threshold matter, this case was filed over a year ago and has been stayed since January 26, 2016 while the parties engaged in settlement discussions. As a result, Plaintiff asserts that it has not taken any discovery in this matter during this time or filed any of its intended motions for default judgment or for partial judgment on the pleadings. (Dkt. 62, p. 20.) If Defendant Thompson were able to set aside the clerk's entry of default now, the parties would have to reinitiate discovery after a considerable amount of time during which, according to Plaintiff, some witnesses may no longer be available to testify at trial because they have changed positions and employers. (*Id.*)

Moreover, allowing Defendant Thompson to step in at the last minute would be highly prejudicial to all the parties that participated in the settlement negotiations in good faith. Plaintiff asserts that, in the six months since the default was entered against Defendant Thompson, the other parties have spent much time engaged in complex settlement negotiations before Judge Mark Randon and undoubtedly incurred significant legal fees. Defendants Szachta and Van Hevele

6

add that, on March 11, 2016, a seven-hour settlement conference took place involving six attorneys and a majority of the parties, including several who were proceeding pro se.[3] (Dkts. 62, p. 12; 63, p. 4.)

After the settlement conference, negotiations continued for weeks until term sheets were drafted and signed in May 2016. (*Id.*) Per the term sheets, one of the conditions for settlement is that this Court will grant Plaintiff's yet-to-be filed motion for default judgment against Defendant Thompson and the other defendants who did not respond to the Second Amended Complaint (Leo Foran and David Priehs). (Dkt. 62-10, p. 20.) Accordingly, allowing Defendant Thompson to litigate this case now would threaten to undo the binding settlement agreement to which the other parties have agreed. Defendant Thompson could have participated in these negotiations, even on a pro se basis, but she chose not to do so. This factor weighs heavily against granting Defendant Thompson's motion.

### 2. Defendant Thompson States a Meritorious Defense to One Claim

Defendant Thompson has articulated a meritorious defense to one, but not to both, of Plaintiff's claims. In the Sixth Circuit, a defendant must state "a defense good at law" in order to establish a meritorious defense. *INVST Fin. Group, Inc. v. Chem–Nuclear Sys., Inc.*, 815 F.2d 391, 398–99 (6th Cir.1987). The asserted meritorious defense will be deemed sufficient so long as it contains "'even a hint of a

---

[3] Although Defendant Thompson did not participate in the settlement negotiations, the other parties discussed whether to release her from liability in any final agreement. At the status conference held in this matter on June 24, 2016, the parties that did participate in the settlement conference confirmed that they discussed how to include Defendant Thompson in the final agreement and it was determined that she would not be released because she was not similarly-situated to those parties being released from liability; instead, the parties agreed to treat Thompson like Defendant Brian Benner because some of the parties insisted that she and Defendant Benner were co-conspirators who intentionally committed wrongdoing.

suggestion' which, [if] proven at trial, would constitute a complete defense." *Id.* A defendant need not demonstrate a likelihood of success on the merits. *Berthelsen*, 907 F.2d. at 621–22. Finally, all ambiguous or disputed facts must be resolved in the light most favorable to the defendant. *INVST Fin. Group*, 815 F.2d at 398.

In the Second Amended Complaint, Plaintiff asserts two counts: (1) for a declaration that the 2014-2015 Lawyers Professional Liability Policy is void ab initio due to misrepresentations in the application; and (2) for a declaration that, even if the 2014-2015 Policy were not rescinded and void ab initio, it would not afford coverage for any of the liability claims asserted by third parties against Defendants. (Dkt. 26-3, ¶¶ 3-4.)

In her motion, Defendant Thompson asserts that she has a meritorious defense to these claims because "Plaintiff wrongfully failed and refused to provide a defense and indemnification of Ms. Thompson under the insurance policies," resulting in a breach of the insurance policies that are the subject of this action. (Dkt. 60, pp. 13-14.) According to Defendant Thompson, "Plaintiff never demonstrated that the claims against Ms. Thompson were outside the scope of coverage of the insurance policies and, wrongfully and unilaterally, ceased providing insurance coverage to Ms. Thompson, an insured person." (*Id.* at 13.)

As Plaintiff notes, however, this defense speaks only to Plaintiff's second claim – whether the policy in question affords coverage, as a contractual matter, for the third-party liability claims asserted against Defendants in relation to the suspected misappropriation of settlement funds. Defendant Thompson articulates

8

no defense to Plaintiff's first claim – that the policy was void from the beginning because of material misrepresentations made in the application. Without a defense to the claim that Plaintiff is entitled to rescind the policy in question, setting aside the clerk's entry of default against Defendant Thompson will not result in a different outcome, even if this matter were to proceed to trial.

Accordingly, although Defendant Thompson is able to articulate a defense to one of Plaintiff's two claims, this second factor does not, on balance, weigh in favor of granting Defendant Thompson's motion.

### 3. Defendant Thompson Willfully Disregarded these Proceedings

There is no evidence that Defendant Thompson deliberately attempted to thwart these proceedings, but the record supports the conclusion that Defendant Thompson acted in a careless and inexcusable manner by not responding to the Second Amended Complaint despite repeated notice from two courts that the bankruptcy stay had been lifted with respect to this case and that this case was proceeding against her.

Proceedings against Defendant Thompson were stayed in this matter when she filed for bankruptcy. Defendant Thompson admits, however, that she received the Second Amended Complaint and this Court's January 26, 2016 Order granting Plaintiff leave to file said complaint. (Dkt. 60, p. 9) Both of these documents explicitly state that any stay previously in effect in this case has been lifted and that this case is now proceeding against Defendant Thompson. Moreover, the bankruptcy court's order lifting its stay for the explicit purpose of allowing Plaintiff

9

to proceed against Defendant Thompson in this court was entered three months before the clerk's entry of default was granted. Defendant Thompson does not deny that she was served with this order[4] or with Plaintiff's motion for relief from the bankruptcy stay that preceded it.

In short, Defendant Thompson had ample notice that Plaintiff was seeking relief from the stay, was granted that relief, and had renamed her as a defendant in this case before the clerk's entry of default was granted. Even after the clerk's entry of default was granted, Defendant Thompson continued to do nothing, seemingly acquiescing in the clerk's entry of default. In total, Defendant Thompson allowed the default to sit unchallenged for over six months, only stirring to action after the other parties had hammered out a settlement which Defendant Thompson perhaps sees as unfavorable to her.

Although Defendant Thompson is not an attorney, according to the record she worked as a legal assistant or legal secretary in a law firm setting for approximately 38 years. (Dkt. 63, p. 2.) For 29 years, she was Defendant Benner's legal assistant and served as the office manager of Defendant Benner's law firm for 15 of those years. (*Id.*) Based on this experience in a law firm setting, Defendant Thompson would appear to possess an above-average familiarity with court filings, related legal documents, and the significance of meeting filing dates and keeping current with the Court's docket.

---

[4] Given that the bankruptcy court's order lifting its stay with respect to this case also orders Plaintiff to pay certain "claim expenses" incurred by Defendant Thompson, it seem unlikely that the order would have escaped Defendant Thompson's notice.

10

Accordingly, the Court does not give weight to Defendant Thompson's assertions that she simply did not understand, despite repeated notice, that the bankruptcy stay had been lifted to allow Plaintiff to pursue this action, or that she did not fully appreciate the consequence of having a clerk's entry of default entered against her. Even if the Court gave weight to these assertions, Defendant Thompson benefitted from the assistance of counsel throughout her bankruptcy proceedings. Her counsel would have received electronic notice of the bankruptcy court's order lifting the stay and would have been responsible for bringing this important order to her attention. Defendant Thompson does not assert otherwise.

Defendant Thompson has not articulated good cause justifying her delay in appearing in this matter. "[I]t is not necessary that conduct be excusable to qualify for relief under the 'good cause' standard of Rule 55(c)." *Shepard Claims Serv.*, 796 F.2d at 194. The Sixth Circuit has made it clear that "[t]o be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Id.*

While there is no evidence in the record indicating that Defendant Thompson deliberately attempted to thwart these proceedings, there is ample proof that she recklessly disregarded the effect her dilatory conduct would have. Defendant Thompson willfully disregarded these proceedings after receiving repeated notice that the bankruptcy stay had been lifted. Defendant Thompson was given due warning that the case was proceeding against her and she had every opportunity to litigate it. While her conduct does not rise to the level of "an intent to thwart" the

11

proceedings, it is strongly suggestive of a reckless disregard for the effect her conduct would have on the proceedings. Though this factor is less compelling than the other two, it also weighs in favor of denying relief.

On balance, the Court finds that the circumstances in this case do not support setting aside the clerk's entry of default against Defendant Thompson and allowing her to proceed on the merits at this late stage. The Court makes this determination with the understanding that the burden Defendant Thompson must meet is lighter than that imposed on a party seeking to set aside a default judgment.

Accordingly, Defendant Angela Thompson's Motion to Set Aside Clerk's Entry of Default (Dkt. 60) is **DENIED**. Moreover, given that the continuance requested by the parties in their May 23, 2016 status report expired on July 7, 2016, the parties are directed to file their settlement documentation. (*See* dkt. 59, p. 2.)

**SO ORDERED.**

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated: July 12, 2016

### Certificate of Service

I hereby certify that this Order was electronically submitted on July 12, 2016, using the CM/ECF system, which will send notification to each party.

By: s/A. Chubb
Case Manager